Good morning, Your Honor. I'm happy to be here and I'm also probably dismayed that I'm actually here, okay, for a bit involving an accident or an event that occurred on January 16, 2016 in Charleston, South Carolina. There are two appeals going on in this matter, one in the Seventh Circuit and one before Your Honor. The two have crystallized into whether or not what the meaning is of Foreign or International Tribunal in Article 28 U.S.C. 1782. Judge David Norton in the District Court in Charleston read a very concise and very clear opinion. However, when he got to the end of the opinion, I think he made an error, and that's why we're here. But he did say that the issue needs to be resolved somehow because the decision by Judge Justice Ginsburg in Intel in 2004 was not necessarily certain or clear on what a tribunal was in terms of the statute which was amended in 1964. Judge Buckle, Elaine Buckle, in the middle, in the Central District, or I'm sorry, the District Court in Chicago, who had written two opinions, one in our case, denying that a tribunal meant private arbitrations, also made the point when she wrote an opinion on rehearing of our subpoena that we had served on the Boeing Company that the issue needs to be addressed by the Seventh Circuit, perhaps by the Supreme Court of the United States. So here we are. I believe that this Court, and as the Sixth Circuit Court of Appeals issued its opinion on September 19th, made it very clear of what the intent of this amendment in 1964 was. And that is what we are believed from the beginning when we started this whole process here of trying to exercise our rights under 28 U.S.C. 1782. Servotronics is a small, high-tech company in Buffalo, New York. It makes a small component that's probably half the size of this glass that monitors and helps to monitor fuel flow in a Trent 1000 engine manufactured by in January of 2016. And unfortunately, during an engine run after numerous problems with regard to fuel flow, the engine was started, there was a tailpipe fire, and the wing of the aircraft was nearly burned off. And this is a dreamliner. I mean, this is an incredible modern aircraft which sells for approximately 120 million dollars. It's a state-of-the-art aircraft in the So we ended up in this problem because our product was, as we saw, malfunctioned initially. However, we contended that the causation of the tailpipe fire and the resulting damage to the wing of this aircraft was not in the chain. The chain of causation was broken by the actions of Boeing and Rolls-Royce in how they handled this problem. It should never have happened. And therefore, when Boeing settled with Rolls-Royce for the damage to the engine and the damage to the aircraft, they came after Servotronics from Buffalo, New York, which had entered into a long-term contract in 2009 with Rolls-Royce to provide them these little parts called MVSVs, metering valve servo valves. So that agreement in 2009 provided for a high-level dispute resolution process. First, it started with a high-level meeting. The attorneys, ultimately me, I got instructed much later, agreed we would skip the high-level meeting and we were going to go through a mediation process. So to assist in that mediation process, which had to take place in the UK, with an appointed mediator, which had been arranged and scheduled, we asked Rolls-Royce for discovery and assistance. We wrote letters. That started in August 22nd of 2017. The incident was, or the event was, 2016. In that process, we ultimately ended up in disputes and arguments about what should be produced, what we were entitled to, and what we were not entitled to. Ultimately, it ended up in a conversation with the in-house counsel of Boeing in Charleston, in which we laid out, we thought, what we were entitled to. I have a question about your discovery disputes that might get us to sort of, the statutory question that's at issue here that you said we needed to resolve. It sounds like there was a discovery dispute, and under the Federal Arbitration Act, discovery would be pretty severely limited. And on your reading, under Section 1782, discovery would be much more expansive because this is a foreign or international arbitration. And I guess I'm asking why that makes any sense. Why would there be basically an exception to the FAA's discovery limitations for arbitrations that are deemed foreign or international? Well, if we go back all the way to the Federal Arbitration Act, which came about in 1930 or 1925 by the Congress, as I recall, and then we get up to 1958 when the foreign assistance is going to be provided to foreign judicial bodies under 1782 enacted by the Congress. And then we go to the amendment in 1964. The dominant drafter of that amendment was Hans, Professor Hans Schmidt. And he was well aware of the fact that the Federal Arbitration Act differed in context from what was going to be allowed and permitted under this revised statute. So in the arguments, I mean, you will hear this argument again today from the Boeing Company, that there's a conflict between the Federal Arbitration Act. Well, I guess I'm not even asking you to address whether or not there's a conflict. I'm just saying, as a matter of common sense, we have this very strong federal pro-arbitration policy, which rests in part on an understanding that arbitration is so efficient and it's so inexpensive because discovery is so limited. And if Congress were going to make an enormous exception to that rule for arbitrations that are deemed foreign or international, and we can come back to what that means, I would have expected some indication of that somewhere, like in the statutory text or something like that. So why does it make sense for us to assume that Congress intended this kind of bifurcated discovery rule when it comes to arbitration with one set of rules applying to foreign or international arbitrations and another set of rules applying to domestic arbitrations? And not only that, but it neglected to say so in the text of the statute. In the text of the statute, that's true. It doesn't say anything about any comparison between the FAA and the 1782. It does not. But in the legislative history, in the congressional legislative history of why it was enacting this statute, this revised statute, which took the language of state organized tribunals or judicial bodies, providing them assistance, and changed it to foreign or international tribunals. It is clear that at that time, they were the dominant drafters, and I don't know whether it was Judge Ginsburg, who at the time was also a participant in that. When they were drafting it, they said, we are here to assist and provide some reciprocity between international tribunals, generally, and provide them assistance in discovery in the federal court system in the U.S. through this statute. And although it's Judge, I'm sorry, Professor Schmidt makes very clear that a comparison, which was relied upon in the Biedermann case and in the national broadcast of the conflict or alleged conflict between the FAA and this statute, as Professor Schmidt has written over and over again, one has nothing to do whatsoever with that. And because we provided greater latitude to a foreign tribunal to conduct discovery as we are here. We are an American here. We are an American company trying to get discovery of a non-party to the arbitration in the U.K. And he said, Schmidt said, that we can't make that comparison. It doesn't fit. If anything needed to be done about the FAA in terms of Article 7 as to what will be permitted or not permitted in terms of discovery by the panel, the panel can do things. But here you're giving the party, the foreign party who has interest, the authority to come here and to get discovery. So here we have the U.S. Yes, Your Honor. You may be taking it a little broader than you have to. It seems to me the FAA as well as the Arbitration Act of 1996 in the U.K. provide that the arbitrator can subpoena and direct people to come before the panel and testify and produce documents. Both on the FAA you can do that. And we don't call that discovery. We call that compelling the attendance of the arbitration. It looks to me that this is a little ambivalent in this text of this statute, but it looks like this statute intends to be a surrogate for people who aren't available who would testify at the behest of the district court before the district court as if it were the arbitrator. But it's not just a discovery device. It's actually in order to give the testimony to the arbitration panel in Europe. And if that's so, then it's severely limited. It's not discovery. You remember discovery used to be evidence, I mean, matters that are reasonably calculated to admissible evidence. And that was changed recently to related to a claim or defense. This could be objected to by Boeing if it was just discovery. It seems to me by the way, if your effort is to get this testimony to present to the arbitration panel as an absent witness or a document which is to be presented to the arbitration panel, not for discovery purposes, it may be much more restricted than just included in the discovery device. Because if it's a discovery device, you can see the problem because discovery in United States litigation is the major cost of litigation. And arbitration is the major ameliorator. And a lot of companies like the arbitration to get rid of that cost and also some of the risks. But it seems to me if we think of it as parallel to an arbitration proceeding, it's much more restricted. I'm just looking here to give his testimony or a statement or to produce a document for use in the proceeding. Exactly. I agree completely. And so it's not a discovery device as much as it is to get the testimony or the statement or the document that can't be otherwise procured. It's international cooperation. Exactly. I agree with you, Your Honor. Well, if you argue it's a discovery device, it seems to me, and if it's going to be construed as a discovery device, I think Boeing's just substantially sound. You can't open up arbitration to the normal American litigation under the discovery rules. I agree with you, Your Honor. Probably I have mischaracterized it. What we are seeking here in the subpoena that we served in Chicago, it was a subpoena to get documents for use in the arbitration. I mean, that's really what 1782 is all about. It seems to me any court issue in an order has to limit, has to, I mean, Justice Breyer's dissent laid out all the problems, and it seems to me any order under 1782A should include those restrictions. There should be tight restrictions. It should be treating the district court in the United States as if that court were a surrogate for the to allow it. This goes to the policy. The question is still open. Is the arbitration panel, the arbitral panel, as they call it in England, is that a tribunal? And that's still a dicey question. I just, that is the big question. Apparently, that is the big question in the minds of Judge Norton and Judge Buckle in Chicago. You agree, don't you, that's the question? I agree it's a question, but I think the question is absolutely settled as to whether an arbitration is a tribunal or not. I think that is clear. That is clear from all the notes and comments that Professor Schmidt wrote. I think it's clear from Intel, because Intel didn't involve a judicial, it was an investigatory body. But I want to go back to your question, your initial question about getting discovery. What we are here for, we served a subpoena in Chicago. We served subpoenas on, we were intending to serve subpoenas on three to present to the panel at the hearing in the UK, in London. My only point is if you serve a subpoena to get testimony, it's a little bit like the procedure in the Rules of Procedure where you get testimony of a person who's on a ship or something. You're going to get a pre-trial testimony for use in the trial. Right, but it's very similar. That's a lot of difference than a discovery concept. And if you call it discovery, you have now changed the whole nature of arbitration, both in England and maybe the United States. I probably am a guilty person for characterizing it as discovery. What we are all trying to do here is gather, which when we started up, Boeing refused to give us materials and documents that we wanted in order to prepare our defense in the arbitration in the UK. We then asked for... You need those things to present. Present, prepare and present to the panel. The panel, the panel can then decide whether it will admit that testimony if it's depositions or admit the documents that we got from the Boeing company. That is up to the panel. The, the, there is absolutely no restriction by, under the UK Federal Arbitration Act or by the U.S. Borders. Interesting act. It's much more fulsome than the American Act. It is. But it seems to provide the same basis that the panel will issue subpoenas to bring people before the panel. If it can. But there is no discovery, basically. You have to get everything through the panel, as you do in the, under the FAA. And the panel, and the panel, and the panel can, cannot, cannot bar us from the intel case, Justice Ginsburg cited the case called South Carolina Insurance Company, in which it said that the House of Lords had ruled that, obviously, whatever rights that the party participant in the arbitration has, it can exercise those rights. We, in fact, exercised our rights under 28 U.S.C. shortly after the arbitration notice was released. Well, the U.S.C. is American assistance to a foreign tribunal. Yes. And the assistance is discretionary and probably has a lot of boundaries. And 28 U.S.C. 1782 provides that. There's four criteria. That's what I'm focusing on. The, the, the district court judge can monitor whether it's abusive, burdensome, or otherwise, and restrict it, or limit, or even deny this assistance that you want, documents and testimony. That is right within the four discretionary factors. Thank you, Your Honor. May it please the court, Michael Pazner representing Apelli, the Boeing Company, and speaking on behalf of Apelli Rolls-Royce, as well. I'm joined at counsel's table by Henry Parr, representing Rolls-Royce. Judge Harris and Judge Niemeyer, I'd like to address the concerns that you expressed about the Federal Arbitration Act. And Judge Harris, I believe you said, why would it make sense to have Section 1782 apply broader than the Federal Arbitration Act, and it just seems to be a matter of common sense. And you're exactly right. It would make no sense, but it's far worse than that. And I'd like to try to lay out some of the complexities and problems that the interpretation that Servotronics is urging would create for the Federal Arbitration. Because the fact is that constraining Section 1782 as applying to private arbitration would create a serious conflict with the Federal Arbitration Act. Let me ask you this. A lot has been said in the briefing about private versus governmental. Yet, if you want to use the FAA as an example, or something on which we can base some arguments under local policy, the Federal Arbitration Act makes us rely on arbitration as an adjunct to judicial intervention and litigation. It's monitored by the courts, it's enforced by the courts, and it's reviewable by the courts under all the restrictions and provisions. And it would not be hard to say that an arbitration panel in the United States is an adjunct or another option of efficiency that eliminates the expense when the parties seek an agreement and the agreement is enforceable in a court of law. If we assume that's so, it looks like England has done the very same thing. They have created an adjunct. It's not just a private contract enforceable in a court of law as a contract. It is a sanctioned process in view of judicial process. And it is enforceable in a court of law as a judicial process and it's monitored and there's all kinds of restrictions on the tribunal, like under the FAA. Many more in England. You've seen the act. I mean, it's fulsome. It's actually impressive. They've gone into almost everything on it. But to say it's just a private, it looks like it is private arbitration and it can only be agreed to under contract, of course, which is a private nature of it. But it is an alternative to judicial proceedings and it is highly regulated and enforced by the state as a benefit to the judicial system. The reason you guys put in arbitration clauses, and I think your company probably does as much as anybody, is to avoid the risks of blue sky damages and long extended years of litigation under the federal rules, which I've always been against. And to get some shorter process that's a little bit more definite. So you may be right. It is private and we think a tribunal is connected somehow to the state. But I'm not sure it is quite as separate as you would have us think. There is not a tribunal, although in England they call it an arbitral tribunal. Both the contract and your contract and the laws, they call it an arbitral tribunal. That doesn't answer the question. You get where I'm at on the private public issue. Absolutely, your honor. And of course, Servotronics could have sought relief under the UK Arbitration Act. They can't get relief for people they can't reach in the United States. That's correct. The UK Arbitration Act is limited to the UK and Wales. But the real question is, in the arbitration, the arbitral panel would like to have the testimony of the number one principal witness about a particular matter. And that particular witness happens to be in New York City. The United States has said, we're going to cooperate internationally and make available, provide assistance to have a more integrated judicial system. And I think 1782 was part of that policy. Some kind of global cooperation on adjudications. Now, the question is, does that reach? They use the word tribunal. And the question is, does that reach an arbitration panel? And I think that's a good question. It's a dicey question. And I guess that's what we're here to answer. But I'm not sure we can just simply say arbitration is private and courts are public. And therefore, a tribunal, this can't be a tribunal. Because arbitration and courts are very closely linked. As you know, under the FAA, they are. Everyone's enforced. They're supervised. You can disqualify an arbitrator. You can even reverse the arbitrator. We give the arbitrator a lot of authority express authority. And we have, we accept the process of the American Arbitration Association, which is private. And the same in England. Theirs is private. But they go to court and they enforce it. And there are a lot of regulations on what the arbitrator can and cannot do, which are state-sponsored regulations. The Arbitration Act of 1996. Your Honor, let me try to get at the questions you're asking. I think you're too much speaking. I want to understand your argument. And that's fine. It's great questions. Let me start by saying the Supreme Court has repeatedly stated that private arbitration is a private contract-based process. And that is a foundational principle in Supreme Court case law going back many years. And let's talk about arbitration. It is a distinct and alternative dispute resolution process, separate and apart from the sovereign court system, and subject to its own... As a matter of fact, we came out with an opinion a few years ago. And we called it a surrogate of judicial process sanctioned by the FAA. The FAA absolutely says that arbitration agreements should be treated on the same terms as other agreements. And it provides various mechanisms around judicial enforcement of agreements, judicial enforcement of awards, and very importantly, discovery. And so let me... It also restricts... It regulates the arbitrators, who can and cannot be. Some can be disqualified. But get to your discovery. That's a good point. Sure. Sure. Sure, Your Honor. So this was an issue that concerned the Second and Fifth Circuits, and we submitted it should concern this court as well. There is a long line of Supreme Court cases that reiterate the importance of avoiding interpretations of federal law that would render the arbitration process slower, more costly, and more likely to lead to procedural morass than final judgment. And that would be precisely the result of applying Section 1782 to private arbitration... Let me go back to my question to your colleague here. If we consider this not a which has all of its foibles and so forth, but we consider this more like the preservation of evidence, don't we have a provision that provides depositions may be taken before actions filed in order to preserve evidence for trial? If we view this act as providing as a surrogate for the arbitral panel, the district court providing testimony that will be used by the panel in circumstances where the person is not available because it's in the United States, that's much more limited than discovery. And it could be restricted to that. In other words, if these witnesses were in England, they would have to go to the arbitration panel and say issue a subpoena to bring them to the hearing. You have to do that in the United States. If this is the same thing, then we would be under the same rules. We would be directing this person to appear before the arbitration panel, actually the district court in this case, because the person's... And if we thought of it that way, your worries would not be as severe, would they? Well, Your Honor, that would be a very different statute than the statute we have in front of us. And it might be a good statute, but in intel, the Supreme Court was clear about what this statute means. And what it means is any interested person can trigger full discovery under the federal rules. It says to give his testimony or statement for use in the panel hearing. Your Honor, the case... And that's very similar to what the arbitrator does in the United States. Oh, it's very different from what an arbitrator does in the United States, Your Honor. Let me explain. 1782 authorizes any interested person to trigger full discovery under the federal rules of civil procedure anywhere the recipient of that discovery resides or can be found. And that is clear... That's a mechanism. That's in order to get them... In the United States, you can subpoena the person. They can issue a subpoena, and a court will enforce the subpoena in the United States. No, Your Honor. It's much more limited under the Federal Arbitration Act. I direct you to Section 7 of the FAA. Only the arbitration panel may issue a subpoena. Not any interested person, like in 1782. By the way, in this case... This person can't issue it, but the court has to issue it in its discretion. No, Your Honor. The district court may. That's what it says. The district court must ultimately make the decision about whether to order discovery, but the discovery process can be triggered. This was all pointed out in the Second Circuit decision and Fifth Circuit decisions. In the text. In the text does not allow a party to notice discovery like the discovery rules under federal rules of civil procedure. You have to go to a court and have its discretion exercised, and it has to direct the statement be given before a particular person. And then that statement is sent to the arbitration panel, and of course they can accept it or deny it. But that's a lot different than American discovery. Well, Your Honor, the district court does have discretion to determine exactly what extent of discovery to authorize. I have no disagreement there. Is discovery in here at all? I don't believe the word discovery... I don't think so. ...appears, but I'm just speaking about the 50 years of interpretation of this statute, which is now a well-established interpretation that yes, the district court has discretion, just like the district court has discretion for regular discovery in the U.S. courts to narrow it, to make amendments to what the parties are requesting. But what this statute authorizes is, again, any interested person, full discovery, if the district court decides in its discretion that's appropriate, anyway... You keep saying that. The interested person cannot do anything. The court has to do it, and the interested person has to get from the court a statement or document to be presented in the proceeding. And the whole gate is through the court. I mean, discovery, you don't have to do that. Discovery, any party can notice discovery. Your Honor, perhaps there are nuances about the difference between this procedure and U.S. discovery procedures. My understanding is what this authorizes is the district court to order full discovery under the federal rules of civil procedure at the request of any interested person. And I'd like to just now talk about some of the implications. I'm sorry, I know you want to move off this, but can I ask you a question? If we were to read the statute the way my colleague is suggesting, is that, I have to admit, what was the request? I won't call it a discovery request, but what was the request for material made? It's a request for three depositions of individuals who were involved in some way in the incident that the arbitration is about. I'm not sure. It says the order may prescribe the practice and procedure, which may be in whole or part the practice and procedure used in a foreign country and so forth. In other words, I don't read this as blowing up in discovery, including from a person under the procedure directed by the court. Your Honor, we did not think of that argument that these entire requests are out of bounds because they conflict with the statute, because the statute did not provide for depositions outside of a court hearing. We will take that argument back. Do you see any notice of a deposition in here or any rules of deposition or anything like that? Discovery, deposition, interrogatories? Your Honor, I don't believe it's in the text of the statute, but I believe it's how the courts have interpreted it. If I What I'm about to say applies regardless, Judge Niemeyer. The district court said that this was an application to take discovery. I guess what I'm trying to get at was, and I will ask your colleague this too, before the district court, did this issue come up at all? No, Your Honor, because this was a threshold determination about whether this statute applies. But the question of whether this statute permits discovery, whether 1782 permits discovery, the district court thought this was an application to take discovery. Absolutely. Because that is the mechanism under Section 1782 that parties have been attempting to use for the last 50 years since the statute was enacted. We did not think, and perhaps it was a paucity of imagination on our part, to argue that the statute does not permit any type of discovery. Just to go a little further, anybody can request it, but the court has to appoint it. But the court doesn't say you do it before a court reporter in your conference room. The court says, may direct the testimony or statement be given or the document or anything produced before a person appointed by the court. And then the court sets up the procedure. And it may prescribe the procedure. So it sounds to me like this is much more like a surrogate arbitration with us helping the English court. And the only need for the help is because they don't have legal process over the person in England. Your Honor, let's stipulate that that's the procedure. The English United States help because the arbitration, the person wants to, the district court is going to act like an arbitral tribunal, surrogate in the United States, and assist the English, whether they request it or not, at the request of an interested party. But the American court isn't providing discovery. The American court is appointing a person and the witness has to come before that person. It's not a deposition. It's a statement. So the person is put under oath and is the two sides can, he'll probably appoint a magistrate judge or something, and the two sides can ask their questions as if they were in arbitration. Your Honor. I don't think the whole argument in your brief that this is just blowing open discovery doesn't seem to be consistent with Congress intended. Judge Niemeyer, regardless of whether it's discovery or a narrower procedure along the lines of what you've described, the fact remains it's still far broader than what is under the Federal Arbitration Act. The district court is thought to be the arbitrator. The district court is functioning like the arbitrator. The application is made to the district court. The court in its discretion can decide whether the statement is to be given and the arrangements, and it must, if it's going to do it, appoint a person before it's taken. The arbitrator decides whether or not to issue a subpoena to come before it or him or her or the panel, and all the arguments can be made why that person shouldn't appear, but the arbitrator can issue the subpoena and require the person to come. The only difference between the two is one is a district judge because we need the process, and that's the only way we can regulate process, and the arbitrator has to enforce the subpoena also through... Judge Niemeyer, I'm sorry, that's not correct. Under the Federal Arbitration Act, you can only get a subpoena issued and enforced in the district in which the panel is seated. So it's where the person was seated. No, it's where the panel is seated under Section 7 of the Federal Arbitration Act. I just want to ask a procedural question. This seems like it is a new argument, and I'm trying to figure out if we could affirm on that ground, and what the district court had in front of it was an application to take discovery. So whether or not, even if it does not allow for discovery, it seems like this thing had to be rejected because this was an application to take discovery. Fair enough, Your Honor. If that's what this court concludes about the statute scope and that it doesn't include pre-hearing depositions or depositions outside... These were proposed opponents. These were for depositions. What was being sought was depositions as part of discovery. I would just say that would be a basis to reject this request. I would just ask the court to take care in reaching a ruling like that, which may be intentioned with certain decisions of other courts that may have described the scope of this process. But let me just say, and I think this is the critical point, Judge Niemeyer, which is even if it's interpreted the way you interpret it, you could use this statute to go anywhere the recipient of the subpoena resides or can be found. Not true under the Federal Arbitration Act. Only in the panel... This is assisting a foreign arbitrator, an arbitral panel. If we conclude, I thought the issue, the main issue you guys were going to argue, the scope of the word tribunal, which is a tough question in and of itself. But the process, one of your main arguments to rule that the private arbitrator is not a tribunal is because this opens everything up to discovery. And that's just an argument as to what tribunal means. And my suggestion is this is not a discovery provision at all. It is a provision by which to take statements in the United States for use in England, which England could have done if the person were in England. It's an international assistance that Congress was providing. And the district court's notion that discovery shouldn't be allowed feeds into your argument, which is a very legitimate argument. If you open up arbitration to discovery, arbitration is defeated. The whole policy for arbitration is defeated. Of course, please. Just on your point that you thought our argument was going to be about the meaning of the word tribunal, that was not going to be our argument. It was going to be the meaning of foreign or international tribunal, which is even the term that my colleague used when he was up here. Very important context provided by those additional terms. I don't have time here to get into all of those arguments, but it's all laid out in our brief. I read your briefs. Both sides were good briefs. The plain meaning, the context, other statutes, other sentences. You referred to the fourth sentence of subsection A that refers to a foreign country prescribing the practice and procedure for the foreign tribunal. Doesn't reference the parties in an arbitration agreement. Doesn't reference any type of arbitral panel. So the plain meaning supports us. But what I would just leave you with, Your Honor, is this court in the CompStat decision said a hallmark of arbitration and a necessary precursor to its operation is limited discovery. And I know that what we've been talking about here is that this is not discovery. This is some third thing that Congress created. It seems to me, reading the text, we should not allow discovery. We should not allow discovery. If we were to do anything for the appellant, if we're doing anything, we would give the appellant the facility to bring somebody before an American tribunal and give a statement for use in the foreign tribunal. That's the limit. And may I just respond to that? All I would say to that, Your Honor, is that that mechanism that you've described, while it would be narrower than full discovery under the federal rules of civil procedure, would still be far broader than what's available under the Federal Arbitration Act for U.S.-based domestic arbitration. As you're reading this in connection with the foreign arbitration, the only argument about the Federal Arbitration Act, to me, is that it's an analog by which we can test the arguments. But I'm not sure I agree with you because I believe the American Arbitration Act authorizes the arbitrator to bring people before the panel. Well, I would say, Your Honor, the Federal Arbitration Act includes Chapter 2, which applies to the New York Convention. It applies to international arbitrations as well. The FAA governs all arbitrations in commerce, arbitration agreements that are entered into in commerce. You're not suggesting that FAA governs this one, do you? Section 7 is not available here because... I'm telling you that FAA is not applicable to this contract, is it? You know, I don't know where this contract was executed, but if it were executed... It's under the laws of England, it says. It's under the laws of England, but if it were enforced in the United States, if the arbitration agreement or an award were sought to be enforced in the United States, that would be governed by Chapter 2 of the FAA. The FAA does apply to arbitrations overseas. And furthermore, this Court has to consider the implications of a ruling here. There have already been litigants that have argued arbitrations in Miami, arbitrations in L.A. Okay, U.S.-based domestic arbitrations, no one's disputing FAA Section 7 applies to that. Very limited discovery. Got to go to the judicial district where the panel is. Only the panel can order it. You can't get pre-hearing depositions. You can't get third-party depositions or testimony. Whether it's depositions or testimony, you can't get it. You can't get pre-hearing document discovery. These parties come in, they say, well, we're international because there's a foreign arbitrator. Or the piece of property we're disputing is overseas. Or there's a contract overseas. Or one of the parties is international. And they argue Section 1782 should apply in that situation. And that they should get access to the broad discovery, broad mechanism for obtaining documents and testimony under Section 1782. That is a clear conflict. And the Supreme Court, as I said, in multiple cases has declared, unless there's clear and manifest evidence of congressional intent to override the Federal Arbitration Act, that is not the interpretation of federal law like Section 1782. That should be adopted. Thank you very much, Your Honors. Your Honor, it's interesting to note, in regard to your questions, Judge Niemar, that in the Sixth Circuit opinion in the FedEx case, that the question of the alleged conflict between the Federal Arbitration Act and the 1782 is not a conflict. One stands for what the FAA was enacted to cover arbitrations for domestic disputes involving interstate commerce. The Foreign Relations and Intercourse Act, which was the predecessor to 1782 and 1781, provided for assistance in comedy to international tribunals in the first instance before amended to what was really characterized as judicial organizer, state judicial panels and tribunals. The amendment provided for tribunals, foreign and international tribunals. The trying to say that the FAA is more restrictive and what we have given to the foreign tribunals, this private tribunal under the Federal Arbitration Act in the UK, and according to the Chartered Institute rules, is in conflict or shouldn't be allowed, is really, we're going backwards instead of what was intended by the Congress when they amended the statute. I don't quite understand what you're saying. What is your position on Section 1782? Do you think you can get the rough equivalent of pretrial discovery under Section 1782? I'm not saying that. Why did you file a motion asking for discovery? I asked, well, there's probably about 19 cases in the district court level in which they characterize the exercise of rights under 1782 as discovery to assist the arbitral tribunal. Isn't that just plain error? Well, it's plain error to probably characterize it as discovery. Error in characterization, but error in format. In other words, this does not authorize a deposition. This authorizes appointment of a person to take a statement. I agree, Your Honor. I agree with you completely. But if you, if we're looking at... If that's what the statute authorizes, did the district court properly reject your motion for discovery? Did the district court... Shouldn't we affirm on the grounds that what you sought was discovery? No, no, it's not. Although we made an application for, for ex parte application to take depositions of three individuals. Right, so why didn't... The court, the court itself, under the discretionary factors, which are part of 1782... I'm sorry, you filed a motion to take depositions and you now agree that under Section 1782, you can't take depositions. So why don't we affirm on that ground, on your own theory? I mean, maybe you can go back and file a different motion. I made an application to serve subpoenas and it was up to the court to authorize those subpoenas or not. But you filed a motion to depose people. Your Honor, I, in the, in the Sixth Circuit, if you, the caption of the, of how they captioned this effort under 1782, it says, in re application to obtain discovery for use in a foreign proceeding. And it's characterized as discovery. But Judge Niemeyer is correct. We are trying to get testimony or statements for use before the panel in the UK. And the district court rejected it, not on this basis, but because it construed the word tribunal. Exactly, exactly. And that we still have to face. That is the issue here. Yeah, and it seems to me the discovery business is just one of the arguments, pro or con, what, whether as a matter of policy we ought to construe tribunal broadly or not. The arguments made, but we still faced at the core with the question of who is a foreign or international tribunal. I agree completely with you, Your Honor. But characterize, using the word discovery is not meant to characterize what the Boeing company is arguing is we're going to go, you know, into the wind on pre-trial discovery and the federal rules. We're not doing that. The court won't allow it. I know, but your motion was for discovery. And as we know, discovery in the United States, I was presiding over some hearings some years back, and some English lawyer said, it's a peculiarity. I mean, American discovery is sui generis. And the world criticizes it, maybe legitimately, I don't know. But Boeing doesn't want what was an effort to get around that by specifying arbitration where you don't have that discovery. They don't want this to be a backdoor to ruin. And it seems to me that's a legitimate argument. If this is a discovery provision, we ought to bury it. But the 1782 was provided out there to assist arbitral tribunals, foreign and international tribunals, in regard to arbitrations or judicial proceedings that are taking place in another country. It applies to that. And it provides that you can ask the court here, which has jurisdiction. Take statements off to assist that tribunal. It has under those four criteria, which has discretion over it, how it will organize or control what will or will not take place. In the lower court decisions around the country, which have ruled that private arbitral tribunals are governed. But that herd is all following each other over the trip? Well, they all characterize it as like, you can take the deposition of Mr. In the Hallmark case, you can take the deposition here. But it really comes down to-  Sorry, Your Honor. Has a circuit court addressed 1782? Yes, the Sixth Circuit, of course. The Sixth Circuit. When we were arguing before the Seventh Circuit, the same day the Sixth Circuit came down and wrote an opinion saying that the arbitral tribunal includes private arbitral tribunals. And also the Second and the Fifth coming out the other way. The Second and the Fifth were in 1999, Your Honor. Oh, but that's not that far back. 1999. And you know what's interesting about that. I misunderstood my question. I didn't mean on the construction of the word tribunal. I'm talking about, if you conclude it's a tribunal, doesn't matter one way or the other for my question. My question is, has anybody construed this circuit court as a discovery provision? I don't think so, Your Honor. I think it rules the statute as providing, as you said, assistance to the arbitral tribunal in the UK. In order to obtain statements of witnesses beyond the reach of England. Or documents. Or documents. Or documents. Or documents. Precisely. Can I, counsel, the Second and the Fifth Circuits, I think it's a really interesting question. They didn't sort of directly bear down on the text of this provision as it relates to what kind of, I'm using the term colloquially, what kind of discovery or statements it allows for. But it did say that it allowed for more than Sections, both of those courts thought that it allowed for more than Section 7 or 7 of the FAA, right? Yes. Interestingly. There are two circuits that have said that. Yeah. Interestingly, it started in national broadcasting in the Second Circuit. A few months later, this is January of 1999, long before Justice Ginsburg issued the opinion in Intel. In January of 1999, National Broadcasting comes and says, wow, this statute is really, there's a lot of inference in it. It's in conflict with the FAA. When the Fifth Circuit got its issue before it on 1782 again, it also argued and relied upon the argument, wow, this is much broader than- That was pre-Intel too, wasn't it? Pre-Intel. 1999. The only post-Intel was the Sixth Circuit. Sixth Circuit. Yes. And there are, I think, about 18 cases in the lower courts. Nine on either side. I think we're ahead by one recently. So the majority of the district courts who have tried to resolve this private tribunal issue have been on our side, okay? But if you go back historically to Biderman and National Broadcasting, the FAA Act, then you're conflicting, you're drawing an improper proportionality comparison between what's allowed under FAA and what was intended by Professor Schmidt and the Congress when they enacted 1782- You ought to not forget the text. Yes. And what they were trying to do is promote international comedy on international disputes. This is an international dispute. Rolls-Royce is in the UK and we're in Buffalo, New York. And that was the purpose of this statute, to assist a tribunal by giving documents or witnesses, and that's what we are here for. Thank you, Your Honor. Thank you, Counsel. We'll come down. Greek Counsel proceeds to our last case.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris